IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BELINDA G. BRADLEY,            :
                               :
    Plaintiff,                 :
                               :
vs.                            :    CIVIL ACTION 10-225-M
                               :
MICHAEL J. ASTRUE,             :
Commission of Social Security, :
                               :
    Defendant.                 :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for disability insurance benefits (Docs. 1, 14). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 12). Oral argument was heard on November 18, 2010. Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or

substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-one years old, had completed several years of college education (Tr. 99), and had previous work experience as a radiologic technologist (Tr. 122). In claiming benefits, Plaintiff alleges disability due to major depression, a personality disorder, and chronic pain syndrome (Doc. 14 Fact Sheet).

The Plaintiff filed an application for disability insurance on December 6, 2006 (Tr. 77-81). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she could not perform her past relevant work, Bradley was capable of performing unskilled medium-exertion work

(Tr. 7-23). Plaintiff requested review of the hearing decision (Tr. 5-6) by the Appeals Council, but it was denied (Tr. 1-4).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Bradley alleges that: (1) The ALJ did not properly consider the opinions and diagnoses of her treating psychologist; (2) the ALJ improperly discounted Plaintiff's own testimony of her abilities and limitations; and (3) the ALJ improperly determined her residual functional capacity (hereinafter *RFC*) (Doc. 14). Defendant has responded to—and denies—these claims (Doc. 16). The relevant[1] medical evidence of record follows.

Psychologist John Davis examined Plaintiff initially on January 11, 2007 for depression; Bradley told him that she had begun to withdraw and generally felt miserable although her husband and children have tried to accommodate her (Tr. 153). Two weeks later, Plaintiff told Davis that she was trying to stay as busy as she could (*id.*). On February 5, the Psychologist stated that Bradley suffered from depression secondary to a general medical condition (Tr. 152). Davis stated that the depression itself was not disabling and would

---

[1]The Court will only summarize the medical evidence which directly relates to the claims raised herein. As Bradley's claims refer to her psychological—and not her physical—impairments, the Court will limit its discussion to her mental health history.

likely wax and wane along with her medical condition; he further stated that "decisions about disability need to be made on [her] general medical condition" (*id.*). On March 13, 2007, Bradley complained of depression and frustration with her fibromyalgia, but tried to keep busy around the house (Tr. 402). Davis noted in April and May 2007 that Plaintiff was doing reasonably well and was trying to stay busy (Tr. 401). On July 9, Bradley returned more depressed than usual about her limitations; on July 24, Plaintiff reported that her fibromyalgia was progressively worsening (Tr. 400). On September 8, Bradley reported frustration and depression over an inability to do things around her house (Tr. 399).

On February 6, 2008, Bradley was admitted to Bradford Health Services/Warrior for treatment of drug dependency in her attempts to combat migraine headaches; she had been taking lortab,[2] klonopin,[3] doxepin, and zanaflex[4] (Tr. 374). Plaintiff was discharged three weeks later with diagnoses of opiate

---

[2] **Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[3] *Klonopin* is a class four narcotic used for the treatment of panic disorder. **Error! Main Document Only.***Physician's Desk Reference* 2732-33 (62nd ed. 2008).

[4] **Error! Main Document Only.***Zanaflex* "is a short-acting drug for the acute and intermittent management of increased muscle tone associated with spasticity." *Physician's Desk Reference* 3204 (52nd ed. 1998).

dependence, Cluster C personality disorder, and a history of migraine headaches; her prognosis was fair (Tr. 377). In the final assessment, it was stated that "[s]he completed her individual treatment goals with her primary counselor, but did not share it in group and did not complete a step one. The patient attended outside meetings, but did not obtain a sponsor" (Tr. 376). Bradley was admitted to the Outpatient Program on March 11, 2008, but was discharged less than a week later against medical advice (Tr. 385-86).

Psychologist Michael Rosenbaum saw Plaintiff initially on April 4, 2008 for depression and anxiety (Tr. 392). After obtaining her psychological history, Rosenbaum administered the BSI which indicated suicidal ideation; Bradley rejected the suggestion that she go to an inpatient program to seek help, but did sign an anti-suicide contract (Tr. 392). Two weeks later, BSI results indicated a reduction in suicidal thoughts; Rosenbaum worked with Plaintiff in trying to help her reduce her level of social anxiety (Tr. 391). On April 25, 2008, the Psychologist spent the session trying to help Bradley with blaming herself for her situation and how to rectify her circumstances (Tr. 390). Plaintiff cancelled her next session and requested that she not be contacted again by Rosenbaum's

office (Tr. 388-89).

On May 15, 2008, after having not seen her for eight months, Psychologist Davis examined Bradley who reported depression at times and some crying spells; on a visit one month later, Plaintiff stated that she was having a lot of social anxiety and did not want to be out of the home (Tr. 398). On July 14, Davis referred to Bradley as being socially isolated and mildly depressed (Tr. 405).

On August 8, 2008, Psychologist John Davis completed a mental residual functional capacity (hereinafter *RFC*) questionnaire in which he stated that Bradley's diagnoses were major depressive disorder and dependent personality disorder and that her prognosis was poor (Tr. 393-97). He indicated that Plaintiff had a mood disturbance, accompanied by a full or partial manic or depressive syndrome as evidenced by the following: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight gain; decreased energy; feelings of guilt or worthlessness; and difficulty concentrating or thinking. It was Davis's opinion that this condition was of at least two years duration. The Psychologist also indicated that she suffered from inflexible and maladaptive personality traits which cause either

significant impairment in social or occupational functioning or subjective distress, as evidenced by the following: seclusiveness or autistic thinking; oddities of thought, perception, speech and behavior; persistent disturbances of mood or affect; and pathological dependence, passivity, or aggressiveness. Davis indicated that Bradley was markedly limited in her ability to maintain social functioning, respond appropriately to supervision, co-workers, and customary work pressures; he found that she would be markedly limited in concentrating and that she would be unable to complete her tasks. It was the Psychologist's opinion that Plaintiff would miss more than three days of work a month because of her impairments and that this had persisted for more than a year.

On August 18, 2008, Psychologist Davis said that Bradley "continues to be somewhat debilitated by her fibromyalgia and other physical ailments;" he also reported a "bit of agoraphobia" (Tr. 404).

At the hearing before the ALJ, Plaintiff testified that she did not sleep well at night and that she worried a lot (Tr. 44-45; *see generally* Tr. 44-50). Bradley stated that she did no housework, that she was not involved with any community activities or school functions, and that she did not have any

friends and did not socialize. She could not concentrate enough to read. Plaintiff had lumbar pain, fibromyalgia, and migraines which kept her from functioning; she stayed depressed most of the time. She did not participate in group therapy because it made her nervous, but she kept seeing Psychologist Davis. Medications did not help with her depression.

In the determination, the ALJ found that although she could not perform her past relevant work, Bradley was capable of performing unskilled medium-exertion work (Tr. 7-23). The ALJ summarized the medical evidence and found that Plaintiff's mental impairments did not meet Listing requirements (Tr. 13); this finding has not been challenged. The ALJ went on to find the following: "In activities of daily living, the claimant has mild restriction. In social functioning, the claimant has mild difficulties. With regard to concentration, persistence or pace, the claimant has moderate difficulties. As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration" (Tr. 13). The ALJ also found that there was "no indication that the claimant cannot function independently outside the area of her home" (Tr. 13). The ALJ went on to find that Bradley had the RFC

> "to perform unskilled medium work as defined
> in 20 C.F.R. 404.1567(c), in function-by-
> function physical terms (SSRs 83-10 and 96-
> 8p), with certain non-exertional
> restrictions associated with that level of
> exertion.  The claimant's specific physical
> capacities and limitations during the period
> of adjudication have been the ability to sit
> for up to 6 hours per day; the ability to
> stand and/or walk for up to 6 hours per day;
> the ability to lift or carry up to 50 pounds
> occasionally and 25 pounds frequently; and
> the ability to perform unlimited pushing
> and/or pulling movements with the upper and
> lower extremities.  The claimant has no
> significant manipulative, postural,
> communicative, visual, or environmental
> limitations.  The claimant's mental
> impairment restricts her to unskilled work.

(Tr. 14).  The ALJ found that Plaintiff's statements regarding her limitations and abilities were not credible (Tr. 20).  The ALJ went on to assign significant evidentiary weight to Dr. Davis's assessment from February 5, 2007 (*see* Tr. 152) but gave no credit to the mental RFC questionnaire he completed on August 8, 2008 (Tr. 21; *see* Tr. 393-97).  The ALJ went on to find, based on the testimony of the vocational expert, that there were specific jobs in the national economy which Bradley could perform (Tr. 23).

After the ALJ's decision was rendered, Psychologist Davis wrote a letter, on March 31, 2009, which recounted his treatment

history of Plaintiff and refuted some of the ALJ's findings (Tr. 407-08). Specifically, Davis stated that the ALJ's reliance on his initial evaluation was misplaced as two years of treatment had passed and her condition had gotten worse, referencing the RFC questionnaire he had completed earlier. Davis also stated that the ALJ's finding that his conclusions were based on Bradley's subjective complaints was misplaced in that while there was overlap in the two he had reached his conclusions based on his own observations.

This concludes the relevant medical evidence of record.

In bringing this action, Plaintiff first claims that the ALJ did not properly consider the opinions and diagnoses of her treating psychologist. Bradley specifically references the conclusions of John Davis (Doc. 14, pp. 15-19). It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[5] *see also* 20 C.F.R. § 404.1527 (2010).

---

[5]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

The ALJ rejected the opinion expressed in Davis's mental RFC questionnaire "because his treatment notes do not support his opinion of the claimant's mental limitations including moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and repeated episodes of decompensation" (Tr. 21). The ALJ went on to note that Davis had stated early on that Bradley's condition would "wax and wane" with her physical condition before pointing out instances where Davis's records supported the prediction (Tr. 21).

The Court finds no reason to restate that discussion here, but, nevertheless, finds substantial support for the ALJ's conclusion. Psychologist Davis's notes do not support the extreme limitations suggested in the RFC he completed. Frankly, his notes provide little evidence of any limitation at all; when his records do provide some hint of inactivity, it is directly linked to her physical impairments. Furthermore, while the assertions made in Davis's March 2009 letter may be correct, his treatment notes fail to support them.

Bradley has also claimed that the ALJ improperly discounted her testimony of her abilities and limitations. The ALJ found

that although Plaintiff had medical impairments which could cause the symptoms of which she complained, her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent that they [were] inconsistent with [her] RFC" (Tr. 20). The ALJ also indicated that his conclusion was based, at least in part, on her failure to follow a medical treatment regimen.

The Court finds substantial support for this conclusion. Bradley's statements of limitation are not supported by Psychologist Davis's treatment notes, as previously discussed; they are not supported by any of the other mental health records either. With regard to a treatment regimen, the record shows that Plaintiff did not participate in all of the activities at Bradford Health Services and then checked out of their Outpatient Program against medical advice; she also failed to heed Psychologist Rosenbaum's advice that she get inpatient treatment for her suicidal ideation. Bradley has not even been consistent with seeing Dr. Davis, allowing eight months to pass between visits at one time, though she was seeking treatment elsewhere.

Finally, Plaintiff asserts that the ALJ improperly determined her RFC. The Court has previously set out the ALJ's

full statement of what he found Bradley's abilities to be (*see* pp. 8-9).  The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2010).

The Court notes that, while Plaintiff makes this claim, the underlying foundation for her argument is the two claims already discussed.  Having found those claims to be without merit, the Court finds no basis for further discussion.

In summary, Bradley has raised three claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED,** *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 19th day of November, 2010.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE
